**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MOON GROUP, INC., et al.,[1] | ) Case No. 21-11140 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING AND APPROVING EMERGENCY POST-PETITION FINANCING; (II) GRANTING LIENS; AND (III) PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS**

Moon Group, Inc. and its debtor affiliates (the "Debtors"), as debtors and debtors in possession in the above-captioned Chapter 11 cases, hereby file their Motion For Interim And Final Orders (i) Authorizing And Approving Emergency Post-Petition Financing; (II) Granting Liens; and (iii) Providing Superpriority Administrative Expense Status (the "Motion"). In support of this Motion, the Debtors respectfully state:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of this case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Nurseries, Inc. (8411); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); and Rickert Landscaping, Inc. (3988). The Debtors' headquarters and mailing address is 145 Moon Road, Chesapeake City, MD 21915.

3. The statutory predicates for the relief requested herein are sections 364, 105, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## BACKGROUND

4. On August 12, 2021 (the "Petition Date"), the Debtors filed respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases. The factual background regarding the Debtors, including their respective business operations, capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of John Pursell, Jr. in Support of the Debtors' First Day Motions filed on August 13, 2021 (the "Pursell Declaration") [D.I. 12].

5. The Debtors have continued in possession of their properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee or examiner has been appointed in these chapter 11 cases. An official committee of unsecured creditors (the "Committee") was appointed by the Office of the United States Trustee on August 30, 2021.

## III.
## RELIEF REQUESTED

7. In this Motion, the Debtors request authority to enter into a debtor in possession loan (the "DIP Loan") for purposes of funding operating expenses and other post-petition costs of the Debtors and to refinance the secured claim of KORE Capital Corporation ("KORE") in the aggregate approximate amount of $5.5 million. The lender under the DIP Loan are Certain Investment Fund(s) for which Legalist DIP GP, LLC (the "DIP Lender") is the general partner.

The Debtors request the entry of an interim order granting authority to enter into the DIP Loan on an interim basis, and the scheduling of a final hearing within approximately 21 days to consider approval of the DIP Loan on a final basis. The Debtors are requesting authority to borrow up to $6,250,000 upon entry of an interim order, approximately $5.5 million of which will be used to refinance the KORE secured claim, and the aggregate amount of $8,000,000 on a final basis.

8. As reflected in the Pursell Declaration and as set forth on the record of the hearings of the Debtors' first day motions, the Debtors require immediate access to postpetition financing to ensure that they are able to continue their business operations and to refinance the prepetition KORE credit facility, which is secured by the Debtors' accounts receivable. Absent authority to enter into the DIP Loan, the Debtors, their creditors and the estates generally would suffer immediate and irreparable harm because the Debtors' viability will be jeopardized, resulting in an immediate and pronounced deterioration in the value of the Debtors' businesses. Thus, the Debtors' access to the DIP Loan is absolutely necessary to preserve and maximize value for the benefit of all of the Debtors' stakeholders.

9. The Debtors submit that the terms of the DIP Loan are reasonable and more favorable than financing terms otherwise available in the marketplace, particularly when considered in relation to the Debtors' current financial condition.

### IV.
### CONCISE STATEMENT OF THE MATERIAL TERMS OF THE PROPOSED DIP LOAN

10. The following chart contains a summary of the material terms of the proposed DIP Loan, in accordance with Bankruptcy Rule 4001(b)(1) and Local Bankruptcy Rule 4001-2(a)(ii):[2]

---

[2] This summary is qualified in its entirety by reference to the provisions of the Interim Order. The proposed Interim Order will control in the event of any inconsistency between this Motion and the proposed Interim Order.

| **Material Terms** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| **DIP Loan Parties** *Bankruptcy Rule 4001(c)(1)(B)* | <u>Borrower</u>: Debtors and Debtors-in-Possession <br><br> <u>Lender</u>: Certain Legalist DIP GP, LLC serves as general partner | Interim Order Introduction |
| **Amount of Borrowing** *Bankruptcy Rule 4001(c)(1)(B) Local Bankruptcy Rule 4001-2(a)(ii)* | An amount not to exceed $6,250,000 upon entry of an interim order and $8,000,000 in the aggregate upon the entry of a final order. | Interim Order, ¶ 3 |
| **Purpose / Use of Funds** *Bankruptcy Rule 4001(b)(1)(B)(ii) Local Bankruptcy Rule 4001-2(a)(ii)* | The Debtors seek authority to use the proceeds of the DIP Loan for, among other things, (i) working capital requirements; (ii) general corporate purposes; (iii) the costs and expenses of administering the chapter 11 cases, in each case pursuant to and in accordance with the 13-week cash collateral budget attached as Exhibit 1 to the Interim Order (as the same may be updated in accordance with the terms of the Interim Order, the "<u>Budget</u>") and (iv) to refinance the prepetition KORE credit facility on the terms described herein. | Interim Order, ¶ 2 |
| **Interest Rate** *Bankruptcy Rule 4001(c)(1)(B) Local Bankruptcy Rule 4001-2(a)(ii)* | U.S. prime rate (subject to a 4.00% floor) plus 11.75% per annum <br><br> The non-default interest rate set forth above plus 4.75% percent per annum. | Interim Order, ¶ 3 |
| **Fees** *Bankruptcy Rule 4001(c)(1)(B)* | <u>Commitment Fee</u>: Two (2%) percent of the DIP Loan amount <br><br> <u>Underwriting Fee</u>:  One (1%) percent of the DIP Loan amount <br><br> <u>Monitoring Fee</u>: 1.75% of the DIP Loan amount per annum <br><br> <u>Undrawn Line Fee</u>: Two (2%) percent of the DIP Loan amount in the event that the DIP Loan is not consummated for any reason other than the failure to obtain an interim or final order or a default by the Debtors [?]. | DIP Credit Agreement Sections 2.04 and 2.05. |
| **Maturity Date** *Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(ii)* | Earlier of (a) 18 months from the entry of a final order approving the DIP Loan, (b) the Effective Date of a confirmed plan of reorganization, or (c) following the occurrence of an Event of Default which is not cured as provided in the DIP loan agreement. | DIP Credit Agreement Section 1.01 |
| **Optional Prepayment** | Borrower may voluntarily prepay the DIP Loan, in whole or in part, without premium or penalty, beginning one year after the entry of the final order approving the DIP Loan. | DIP Credit Agreement Section 2.07(a) |
| **Mandatory Prepayment** | Within ten days after Debtors' receipt of proceeds resulting from the sale or other disposition of DIP Collateral subject to DIP Lender's first priority lien outside the ordinary course of the Debtors' businesses. | DIP Credit Agreement Section 2.07(b) |

| **Material Terms** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| **Events of Default**<br><br>*Fed. R. Bankr. P. 4001(b)(1)(B) and (c)(1)(B)(iii); Local Rule 4001-2(a)(ii)* | Standard and customary events of default for financings of this type, including, without limitation:<br>• non-payment of principal, interest and fees;<br>• breaches of representations and warranties;<br>• defaults under affirmative and negative covenants;<br>• impairment of security interests in the DIP Collateral;<br>• a Debtors' application or the entry of an order, in either case without the prior written consent of the DIP Lender, for the appointment of a trustee or examiner with enlarged powers under the Bankruptcy Code;<br>• entry of an order dismissing a Case or converting a Case to a case under Chapter 7 of the Bankruptcy Code;<br>• violation by any Debtors of any provisions of the DIP Orders if such violation is adverse to the DIP Lender; | DIP Credit Agreement Section 8.01 |
| **Priority of DIP Liens and Effect on Existing Liens**<br><br>*Fed. R. Bankr. P. 4001(b)(1)(B)(i), (ii) and (c)(1)(B)(i); Local Rule 4001-2(a)(i)* | The DIP Lender shall be granted (i) senior security interests in and liens on all of the Debtors' unencumbered property (other than Avoidance Actions or their proceeds) pursuant to Bankruptcy Code section 364(c)(2), (ii) pursuant to Bankruptcy Code section 364(c)(3), security interests in and liens on the Debtors' encumbered real and personal property other than Accounts and Cash, which liens shall be junior and subordinate to the Permitted Senior Liens, and (iii) senior liens on all Accounts and Cash subject only to the Carveout | Interim Order, ¶ 6<br><br>DIP Credit Agreement Section 10.03 |
| **Superpriority Claims** | DIP Claims are superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in the DIP Orders)) and (y) all other unsecured claims against the Debtor. | DIP Credit Agreement Section 1.01 |
| **Covenants**<br><br>*Fed. R. Bankr. P. 4001(c)(1)(B)* | Affirmative, negative and financial covenants that are customary and appropriate for financings of this kind. | |
| **Budget**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* | The Budget is defined above and attached as Exhibit 1 to the Interim Order. | Interim Order, ¶ 2 |
| **Liens on Chapter 5 Actions**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(D)* | No. | |
| **Milestones** | None. | |
| **Carve-Out**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(F)* | Carve-Out. For purposes of the Interim Order, the "Carve-Out" shall mean the sum of $200,000 for allowed professional fees incurred following the Carveout Trigger Date and administrative expenses, including all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate | Interim Order, ¶ 16<br>1 |

| **Material Terms** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| **Cross-Collateralization**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(A)* | None. | |
| **Findings re Validity/ Perfection/Amount**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | Not applicable. | |
| **Challenge Period**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | Not applicable. | |
| **506(c) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(C)* | Upon entry of a final order. | Interim Order, ¶ 15 |
| **552(b) Waiver**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(H)* | Yes. | Interim Order, ¶ 9 |
| **Releases**<br><br>*Local Bankruptcy Rule 4001-2(a)(ii)* | None. | |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(E)* | Not applicable | |
| **Non-Consensual Priming**<br><br>*Local Bankruptcy Rule 4001-2(a)(i)(B)* | The DIP Lender will be granted non-consensual priming liens on the Debtors' Accounts and Cash. | Interim Order, ¶ 6<br><br>DIP Credit Agreement Section 10.03 |

## V.
## HIGHLIGHTED PROVISIONS UNDER LOCAL RULE 4001-2(a)(i)

11.    Local Bankruptcy Rule 4001-2 requires that certain provisions be highlighted and that the Debtors provide justification for the inclusion of such highlighted provisions. The Debtors believe that the following provisions of the Interim Order are required to be identified in

accordance with Local Bankruptcy Rule 4001-2 and that such provisions are justified and necessary in the context and circumstances of these cases.

    a. **Local Rule 4001-2(a)(i)(A) —** *Cross-Collateralization*. The Orders do not provide for cross-collateralization.

    b. **Local Rule 4001-2(a)(i)(B) —** *Validity, Perfection, and Amount of Prepetition Liens.* The Orders do not contain any such provisions.

    c. **Local Rule 4001-2(a)(i)(B)–***Committee Challenge Period.* Not applicable.

    d. **Local Rule 4001-2(a)(i)(C) —** *506(c) Waiver*. The Interim DIP Order provides for a 506(c) waiver upon entry of a final order.

    e. **Local Rule 4001-2(a)(i)(D) —** *Liens on Avoidance Actions.* The DIP Lender shall not have a lien on causes of action under Chapter 5 of the Bankruptcy Code or the proceeds of such causes of action.

    f. **Local Rule 4001-2(a)(i)(E) —** *Provisions Deeming Prepetition Debt to be Post Petition Debt.* The Orders do not contain any such provisions.

    g. **Local Rule 4001-2(a)(i)(F) —** *Disparate Treatment of Professionals Retained by the Committee.* In compliance with Local Rule 4001-2(a)(i)(F), the Interim Order contains no provisions that provide for disparate treatment for professionals retained by the Committee with respect to the Carve Out. The Interim Budget does include a line item for Committee professional fees.

    h. **Local Rule 4001-2(a)(i)(G) —** *Non-Consensual Priming.* The DIP Lender will be granted non-consensual priming liens on the Debtors' Accounts and Cash.

    i. **Local Rule 4001-2(a)(i)(R) —** *Provisions Affecting the Court's Power to Consider the Equities of the Case.* The DIP Lender is requesting a waiver of Section 552(b)..

## VI.
## NEED FOR POST-PETITION FINANCING

12.    The preservation of value of the Debtors' businesses hinges upon obtaining access to post-petition financing. The Debtors use cash on hand and cash flow from operations to satisfy payroll, pay suppliers, meet overhead, and make any other payments that are essential for the continued management, operation, and preservation of the Debtors' businesses. The ability to satisfy these expenses as and when due is essential to the Debtors' continued operation of their businesses during the pendency of these cases. Indeed, without access to post-petition financing,

the Debtors and their estates would suffer immediate and irreparable harm as a result, among other things, of their inability to service their landscaping and other customers.  In turn, this would necessitate the cessation of operations and the liquidation of the Debtors' assets.

13.     The Debtors intend to use the post-petition financing to, among other things, fund operations to enable the preservation of the business and reorganization under Chapter 11 and to refinance the KORE prepetition credit facility, as to which the Debtors are presently unable to obtain working capital advances.

14.     In conjunction with the Orders and their request to authorize post-petition financing, the Debtors have formulated the Budget.  The Debtors believe that the DIP Loan will provide the Debtors with adequate liquidity in relation to the Budget. The Budget contains line items for each category of cash flows anticipated to be received or disbursed during the time period for which the Budget is prepared. The Debtors believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their businesses for the period set forth in the Budget.

15.     Pursuant to Section 364(c) of the Bankruptcy Code, the Debtors request that the Court authorize the Interim DIP Loan to provide for payroll and other essential operating expenses and the refinancing of the KORE secured loan pending final approval of the DIP Loan.

16.     The Debtors have determined that they are unable to obtain emergency financing in any alternative manner or on any terms superior to those described herein.  The Debtors submit that the approval of the DIP Loan is necessary to fund their post-petition operating expenses and allow the Debtors to successfully reorganize.

17.     A proposed form of interim order is attached as Exhibit "A" hereto.  In addition to the foregoing terms, the proposed order includes other customary terms for DIP financing orders.

The Debtors request that the Court enter the interim order as soon as practicable to allow the Debtors access to the funds necessary to cover basic operating expenses, and that the Court schedule a final hearing on the matter with notice to creditors.

## VII.
## THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN POST-PETITION FINANCING

18. Authorizing the Debtors to incur post-petition indebtedness pursuant to this Motion will provide the Debtors with the funding necessary to maintain their operations. Absent approval of post-petition financing, the Debtors will be forced to cease all operations.

19. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(l) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in Section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  The Debtors proposes to obtain the financing set forth in the DIP Credit Agreement by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to Sections 364(c)(l), (2), and (3) of the Bankruptcy Code and priming liens on the Debtors' Accounts and Cash pursuant to Section 364(1)(1) of the Bankruptcy Code.

20. Bankruptcy courts grant a debtor considerable deference as to post-petition financing in acting in accordance with its business judgment. *See, e.g.*, *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep 7 Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment

to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

21.  Particularly in view of the inherent seasonality of the Debtors' cash flow, the Debtors' liquidity needs can be satisfied only if the Debtors are authorized to obtain financing under the DIP Credit Agreement and to use such proceeds to fund their operations. The Debtors believe that they would be unable to procure sufficient financing in the form of unsecured credit allowable under Section 503(b)(l), as an administrative expense under Section 364(a) or (b), or in exchange for the grant of a superpriority administrative expense claim pursuant to Section 364(c)(l). Accordingly, the Debtors submit that the circumstances of these cases require the Debtors to obtain financing pursuant to Sections 364(c) and 364(d)(1) of the Bankruptcy Code and, accordingly, incurring post-petition debt pursuant to the DIP Credit Agreement reflects the exercise of their sound business judgment.

22.  The terms and conditions of the DIP Credit Agreement are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arms' length. Accordingly, the DIP Lender and all obligations incurred under the DIP Credit Agreement should be accorded the benefits of Section 364(e) of the Bankruptcy Code. The terms of the DIP Credit Agreement are the best terms available to the Debtor and are more favorable than terms generally available in the market.

## VIII.
## <u>INTERIM APPROVAL SHOULD BE GRANTED</u>

23.    Bankruptcy Rules 400l(b) and (c) provide that a final hearing on a motion to obtain credit may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

24.    Pursuant to Bankruptcy Rules 400l(b) and (c), the Debtors request that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtors to borrow under the DIP Credit Agreement up to $6,250,000 on an interim basis, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtors, (ii) refinance the KORE secured claim and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estate and all parties in interest, and (b) schedule a hearing to consider entry of a Final Order.

25.    The Debtors have an immediate need for cash to continue to operate. Currently, the Debtors project insufficient funds with which to operate their businesses on an ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the Motion, the Debtors will be unable to pay employees and meet their post-petition vendor obligations, which are required to maintain the value of the Debtors' assets. Accordingly, the interim relief requested is therefore critical to preserving and maintaining the value of the Debtors' assets.

26.    To implement the foregoing, the Debtors seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

## IX.
## **RESERVATION OF RIGHTS**

27. The Debtors have and intend to assert substantial claims and/or counterclaims against KORE. Nothing contained herein, including the proposed refinancing of the pre-petition KORE credit facility, shall be deemed a waiver of such claims and/or counterclaims, all of which are hereby specifically preserved.

## X.
## **NOTICE**

28. Notice of this Motion will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Official Committee of Unsecured Creditors, (iii) the Internal Revenue Service; (iv) the Office of the United States Attorney for the District of Delaware; (v) counsel to the DIP Lender; (vi) KORE Capital Corporation; (vii) all secured creditors or their counsel; and (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. Notice of the Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

## XI.
## **NO PRIOR REQUEST**

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## XII.
## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order, in substantially the same form as that attached as Exhibit A, granting the relief requested herein; (ii) schedule a final hearing on the Motion as soon as practicable; and (iii) provide such other relief as the Court deems appropriate and just.

Date: September 13, 2021　　　　　　　　**SULLIVAN · HAZELTINE · ALLINSON LLC**
　　　　Wilmington, DE

　　　　　　　　　　　　　　　　　　　　 */s/ William A. Hazeltine*
　　　　　　　　　　　　　　　　　　　　William D. Sullivan (No. 2820)
　　　　　　　　　　　　　　　　　　　　William A. Hazeltine (No. 3294)
　　　　　　　　　　　　　　　　　　　　919 North Market Street, Suite 420
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Tel: (302) 428-8191
　　　　　　　　　　　　　　　　　　　　Fax: (302) 428-8195
　　　　　　　　　　　　　　　　　　　　Email: bsullivan@sha-llc.com
　　　　　　　　　　　　　　　　　　　　　　　　 whazeltine@sha-llc.com

　　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　**KURTZMAN | STEADY, LLC**
　　　　　　　　　　　　　　　　　　　　Jeffrey Kurtzman, Esquire
　　　　　　　　　　　　　　　　　　　　555 City Avenue, Suite 480
　　　　　　　　　　　　　　　　　　　　Bala Cynwyd, PA 19004
　　　　　　　　　　　　　　　　　　　　Telephone: (215) 839-1222
　　　　　　　　　　　　　　　　　　　　Facsimile: (609) 482-8011
　　　　　　　　　　　　　　　　　　　　Email: kurtzman@kurtzmansteady.com

　　　　　　　　　　　　　　　　　　　　*Counsel for the Debtors and Debtors-in Possession*