| | |
|---|---|
| In re: | Chapter 11 |
| MOON GROUP, INC., *et al.* | Case No. 21-11140 (CSS) |
| Debtors. | **Related Docket No. 140** |

## INTERIM ORDER AUTHORIZING
## DEBTOR-IN-POSSESSION FINANCING

Upon the motion (the "**Motion**"[1]) of the above-captioned debtors (collectively, the "**Debtors**") in these jointly administered chapter 11 cases (collectively, the "**Cases**") seeking entry of an interim order (this "**Interim Order**"), *inter alia*:

1.      Authorizing the Debtors to obtain postpetition financing, consisting of senior secured superpriority term loans in an aggregate maximum amount of $6,250,000 on an interim basis and $8,000,000 on a final basis (the "**DIP Loans**"), from certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner (as lender, agent, and collateral agent, the "**DIP Lender**"), as provided in the DIP Credit Agreement (as defined below) and the Budget (as defined below), and to incur the DIP Obligations contemplated thereby;

2.      Authorizing the Debtors to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by, the DIP Credit Agreement and other DIP Loan Documents;

3.      Authorizing the Debtors to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

---

[1]      Capitalized terms used but not defined herein have the meanings given to them in the DIP Credit Agreement, attached hereto as Exhibit A.

4. Authorizing the Debtors to grant the DIP Lender automatically perfected DIP Liens (as defined below) in all DIP Collateral to secure payment of all DIP Obligations, comprising:

(i) Pursuant to Bankruptcy Code section 364(c)(2), senior DIP Liens on all DIP Collateral not subject to Permitted Senior Liens (as defined below);

(ii) Pursuant to Bankruptcy Code section 364(c)(3), junior DIP Liens on all DIP Collateral subject to Permitted Senior Liens; and

(iii) Pursuant to Bankruptcy Code section 364(d)(1), senior DIP Liens on all Accounts and Cash (as defined below);

5. Vacating and/or modifying the automatic stay, pursuant to Bankruptcy Code section 362, to the extent necessary to (x) consummate the transactions contemplated by the DIP Loan Documents and (y) permit the DIP Lender to exercise any right or remedy provided therein; and

6. Granting the Debtors such other and further relief as is just and proper; and

The Court having held an interim hearing on the Motion on September 15, 2021, and considered any objection to the Motion, and good cause appearing therefor, it is hereby <u>FOUND</u> and <u>CONCLUDED</u> that:

**<u>The Debtors' Chapter 11 Cases; Procedural Background; Jurisdiction and Notice</u>**

A. On August 12, 2021 (the "**Petition Date**"), the Debtors each filed voluntary petitions in this Court for relief under Bankruptcy Code chapter 11. Since the Petition Date, the Debtors have been operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Office of the United States Trustee (the "**UST**") appointed an official committee of unsecured creditors (the "**Committee**") on August 30, 2021. No request has been made for the appointment of a trustee or examiner in the Cases.

B.     This Court has jurisdiction over the Cases and the Motion under 28 U.S.C. §§ 157(b) and 1334, this matter is a core proceeding under 28 U.S.C. § 157(b)(2), venue is proper under 28 U.S.C. §§ 1408 and 1409, and the Court has authority to enter this Interim Order consistent with Article III of the United States Constitution.

C.     <u>Notice</u>. In compliance with Bankruptcy Rule 4001(b), the Debtors have provided notice of the Motion to (i) proposed counsel to the Committee; (ii) counsel for the Debtors' prepetition secured lenders; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Debtors' twenty largest unsecured creditors on a consolidated basis and/or their counsel; (vii) the DIP Lender; (viii) all parties having or claiming an interest in cash collateral and/or their counsel; and (ix) all parties that have requested special notice pursuant to Bankruptcy Rule 2002.

**The Need for Debtor-in-Possession Financing**

D.     A critical need exists for the Debtors to obtain post-petition financing in order to fund their business operations, solely to the extent set forth under the Budget and under the DIP Loan Facility (as defined below). The Debtors are unable to obtain further post-petition financing on an unsecured basis under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code. Further, the Debtors assert that they are also unable to obtain more favorable secured credit from sources other than the DIP Lender that would be allowable under sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code for the purposes set forth in this Interim Order. If the Debtors do not obtain authorization to borrow under the DIP Loan Facility and the DIP Loan Facility is not approved, the Debtors will suffer immediate and irreparable harm. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the DIP Loan Facility is in the best interests of the estates and creditors.

E.     The DIP Lender has agreed to provide the requested DIP Loans under the DIP Credit Agreement and use of its cash collateral in accordance with the terms contained in this Interim Order and in accordance with the DIP Credit Agreement, in the amounts, categories and times set forth in the Budget, which shall be used for: (i) the necessary operation and maintenance costs associated with Debtors' ongoing business operations; and (ii) other costs and expenses of administration of the Cases.

F.     Without the DIP Loans, the Debtors will be unable to pay their necessary operation and maintenance costs, maintain employee obligations, pay lease expenses, and avoid irreparable harm to the Debtors' estates. At this time, the Debtors' ability to finance their operations and the availability of sufficient liquidity through the incurring of new indebtedness for borrowed money and other financial accommodations as provided herein are vital to the preservation of their revenues and the value of the Debtors' assets.

G.     Pursuant to the Motion, the Debtors have requested the DIP Lender to make an interim DIP Loan in the amount of $6,250,000 pursuant to this Interim Order and (in the aggregate) $8,000,000 upon the entry of the Final Order, which funds shall be used by the Debtors solely to the extent provided in the Budget, to fund operations, and to pay the principal and interest due as of payment on the pre-petition secured loan (the "KORE Loan") made by KORE Capital Corporation ("KORE").

H.     The DIP Lender has indicated its willingness to provide the DIP Loans, subject to the terms and conditions set forth herein, including the provisions of this Interim Order and the DIP Credit Agreement, providing that the DIP Liens (as defined below) and the various claims, superpriority claims and other protections granted pursuant to this Interim Order will not be

affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

I.      The DIP Lender's funding of the DIP Loans is conditioned upon (i) the grant of senior liens on all of the Debtors' unencumbered property (other than Avoidance Actions or their proceeds) pursuant to Bankruptcy Code section 364(c)(2), (ii) the grant of liens pursuant to Bankruptcy Code section 364(c)(3)on the Debtors' encumbered real and personal property other than accounts receivable (the "**Accounts**") and cash and cash equivalents ("Cash"), which liens shall be junior and subordinate to the liens of (a) the Debtors' prepetition lenders and/or secured creditors and (b) any valid and unavoidable liens on property of the Debtor in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code (the "**Permitted Senior Liens**")**,** and (iii) senior liens on all Accounts and Cash, subject only to the Carveout (as defined below).

J.      The terms of the DIP Loans, as set forth in the DIP Loan Documents, have been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e) with respect to all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, DIP Loan Documents, and rights and remedies of the DIP Lender. The terms of the DIP Loans are more favorable to the Debtors than terms generally available in the market. In connection with its consent to this Interim Order, the DIP Lender has exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

K.      The terms of the DIP Loans are fair and commercially reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their

fiduciary duties, are supported by reasonably equivalent value and fair consideration, and are enforceable in accordance with applicable law. As such, the funds advanced shall be deemed to have been extended by the DIP Lender in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and, based upon the express reliance of the protections offered by section 364(e) of the Bankruptcy Code, the DIP Liens and DIP Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

L.      Entry of this Interim Order is in the best interests of the Debtors' estates.

M.      The DIP Lender is willing to provide the DIP Loans to the Debtors, but only on the terms of the DIP Loan Documents.

N.      To the extent any portion of the foregoing constitute rulings of law, they shall constitute this Court's rulings with respect to the matters so-stated.

WHEREFORE, it is hereby ORDERED as follows:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights included therein, are hereby denied and overruled.

3.      The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtors are authorized and approved, and the Debtors are authorized and empowered to (x) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (y) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (z) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

**The DIP Loan**

4.       Pursuant to sections 361 and 364 of the Bankruptcy Code and the terms and conditions hereof, until the occurrence of an Event of Default (as defined herein), the Debtors are hereby authorized to borrow funds pursuant to the terms, conditions and provisions of this Interim Order and under that certain Debtor in Possession Credit and Security Agreement entered into on September 13, 2021 (the "**DIP Credit Agreement**") and other DIP Loan Documents (the "**DIP Loan Facility**") in an aggregate amount of up to $6,250,000 upon entry of this Interim Order and up to an aggregate amount of up to $8,000,000 subject to the entry of the Final Order; <u>provided</u>, <u>however</u>, that the Debtors shall use the proceeds of the DIP Loans ("Proceeds") and the DIP Lender's "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") solely in compliance with the budget attached hereto as **<u>Exhibit 1</u>** (the "**Budget**") and incorporated herein by reference (as it may be amended from time to time with the consent of the DIP Lender and as provided herein) <u>provided</u>, <u>however</u>, that the Debtors may exceed any line item in the Budget by up to ten percent (10%) in any week, so long as the aggregate amount of the variance from the Budget for any week on a rolling net basis is not exceeded by more than ten percent (10%).  Further, the Debtors may use Proceeds and Cash Collateral for any particular line item in any given period under the Budget up to the aggregate amount set forth for that line item from the beginning of the period of the Budget through such applicable date. A true and accurate copy of the DIP Credit Agreement is attached hereto as **<u>Exhibit 2</u>**.

5.       The Debtors are authorized to borrow up to $6,250,000 in DIP Loans on an interim basis in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

6.      <u>Payment of Principal, Interest, Etc</u>. The DIP Loans shall accrue interest from the Effective Date at the U.S. prime rate (subject to a 4.00% minimum) plus 11.75% per annum; <u>provided</u>, <u>however</u>, that upon an Event of Default, the DIP Loans shall accrue interest at the additional per annum interest rate of 4.75%. The principal, interest and other obligations owed with respect to the DIP Loans shall be due and payable upon the Maturity Date without further order of the Court.

7.      <u>DIP Liens</u>. The DIP Lender is hereby granted (i) senior security interests in and liens on all of the Debtors' unencumbered property (other than Avoidance Actions or their proceeds) pursuant to Bankruptcy Code section 364(c)(2), (ii) pursuant to Bankruptcy Code section 364(c)(3), security interests in and liens on the Debtors' encumbered real and personal property other than Accounts and Cash, which liens shall be junior and subordinate to the Permitted Senior Liens, and (iii) senior liens on all Accounts and Cash subject only to (i) the Carveout and (ii) any valid and unavoidable liens on property of the Debtor in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by § 546(b) of the Bankruptcy Code, which the Debtors have (to the extent of their respective right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender, and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "**DIP Liens**").

8.      **Superpriority Claims**. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Claims shall constitute allowed senior administrative expense claims against the Debtor (the **"Superpriority Claims")** with priority over any and all adequate protection claims, diminution claims, unsecured claims, and all administrative claims against the Debtor's estate of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code whether or not such

expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the Carve-Out; provided, however, that in no event shall proceeds of Avoidance Actions be used to pay the Superpriority Claims.

9.     <u>Reimbursement of Fees and Expenses</u>.  The Debtors shall reimburse the DIP Lender's reasonable fees and expenses, including without limitation attorneys' fees and expenses (not including the fees of in-house attorneys) (the **<u>"DIP Lender's Expenses"</u>**) up to the amount set forth in the Budget; provided, however, that copies of all invoices reflecting the DIP Lender's Expenses shall be served by email on the Debtor, the DIP Lender, the United States Trustee and Counsel to the Official Committee of Unsecured Creditors (collectively, the "<u>Fee Notice Parties</u>"). The invoices of attorneys shall include the names of the professionals rendering services, their hourly rates, the number of hours billed for each professional, and the year of law school graduation or year of first admission to the bar of any United States Court.  The Fee NoticeParties shall have ten (10) business days to review and to assert any objections thereto; provided further, however, that such invoices may contain redactions (other than invoices provided to the United States Trustee, which shall be unredacted); providing such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  Unredacted copies of invoices provided to the United States Trustee shall be subject to and protected under section 107(c)(3)(B) of the Bankruptcy Code.  Absent written objection by any of the Fee Notice Parties within the ten-day objection period, the DIP Lender Expenses shall be promptly paid by the Debtors.  If an objection is made in writing within the ten-day period by any of the Fee Notice

Parties, then the disputed portion of such DIP Lender Expense shall be reserved by the Debtors pending good faith resolution of the objection by the parties or order of the Court. Notwithstanding anything to the contrary in the DIP Credit Agreement, the DIP Lender shall not be entitled to reimbursement of fees and expenses if the DIP Loan does not close.

10. <u>Adequate Protection</u>. The Internal Revenue Service ("IRS") asserts a lien on substantially all of the Debtors' assets, including the Debtors' Accounts. As adequate protection for the priming liens on Accounts granted to the DIP Lender, (i) the IRS shall be, and hereby is, granted Replacement Liens on the Debtors' pre and postpetition property that is the type of property to which the IRS' liens extended before the Petition Date, and proceeds of such property other than accounts, in the same priority it had as of the Petition Date relative to the liens of North Avenue Capital, LLC and Newtek Small Business Finance, LLC (collectively, the "Term Loan Lenders") and (ii) Replacement Liens on the Debtors' pre and postpetition accounts receivable subordinate to the liens granted to the DIP Lender and KORE and senior to the Replacement Liens granted to the Term Loan Lenders in the *Final Order (A) Authorizing the Debtors to Use Cash Collateral of Primary Lenders and Granting Adequate Protection for Its Use* [Docket No. __] ("Final Cash Collateral Order"). As additional adequate protection, the Debtors shall make monthly adequate protection payments to the IRS in the amount of $25,000. All rights and objections of parties in interest with respect to the validity, extent and priority of the liens of the IRS and the Term Loan Lenders are fully preserved.

11. Nothing in this Interim Order shall modify, alter or amend the adequate protection granted to any party in the Final Cash Collateral Order provide, however, that the Replacement Liens granted to KORE in Accounts shall be junior to the liens of the DIP Lender.

12.     Use of DIP Loan Proceeds. The DIP Loans shall be used solely as set forth in the DIP Credit Agreement (including the Budget) and as otherwise provided in this Interim Order for: (i) the necessary operating costs of the Debtors; (ii) to satisfy the pre-petition KORE credit facility "(with the initial funding to pay principal and interest to KORE, and with the final funding to pay such additional amounts owed to KORE as the parties may agree to or as the court may order at the Final Hearing); (iii) payment of the DIP Loan Expenses and other DIP Obligations, and (iv) other costs and expenses of administration of the Cases as set forth in the Budget; provided that no portion of the DIP Loans shall be used for fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

13.     Reservation of Rights. Notwithstanding the refinancing of the KORE credit facility, all rights, claims and counterclaims of the Debtors against KORE are preserved to the fullest possible extent.

14.     Payments to DIP Lender. Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order shall be received indefeasibly by the DIP Lender, free and clear of any claim, charge, assessment or other liability, including, upon entry of a Final Order, any such claim or charge arising out of or based on section 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtors.

15.     So long as any DIP Obligation remains outstanding, the Debtors shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall not survive full and indefeasible payment of the DIP Obligations).

## Default and Remedies

16.     The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable, upon the Maturity Date.

17.     An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

18.     Notwithstanding Bankruptcy Code section 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Court:

        (i)     Declare the DIP Commitment terminated; and

        (ii)     Declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtors.

19.     Notwithstanding the foregoing, if the DIP Lender intends to assert an Event of Default, the DIP Lender shall provide written notice of default to the Debtor, the U.S. Trustee, and the Committee, and such parties shall have fourteen (14) days to cure or seek an emergency hearing in the Bankruptcy Court. The Debtors or any other party in interest, including the Committee shall, subject to the Court's availability, be entitled to an emergency hearing before this Court within fourteen (14) days after the giving of written notice by the DIP Lender of the occurrence of an Event of Default. If the Debtors or any other party in interest do not contest the occurrence of the Event of Default within such fourteen (14) day period, or if there is a timely contest of the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Maturity Date shall be deemed to have occurred for all purposes and the automatic stay, as to the DIP Lender, shall automatically terminate in all respects.

20.     In consideration of the DIP Lender's (x) consent to the current payment of administrative expenses of the Debtors' estates to the extent of the Budget and (y) concessions

with respect to the Carveout (as described herein), subject to the entry of the Final Order, the DIP Lender shall be entitled to a full and complete waiver, with respect to all parties, of Bankruptcy Code section 506(c) and in no event shall any the DIP Lender or DIP Collateral be subject to any "surcharge" or the doctrine of "marshalling" by any party in any way whatsoever.

21.     Notwithstanding anything to the contrary contained in this Interim Order and Article I, Section 1.01 of the DIP Credit Agreement, the liens, claims and other protections granted to the DIP Lender in this Interim Order shall be subject to a carveout of $400,000 plus any fees due and payable to the UST and/or Clerk of the Court under 28 U.S.C. § 1930 (the **"Carveout")**. Unless and until the Carveout Trigger Date (defined below) occurs, the Debtors shall pay in the ordinary course and as permitted by the Budget all administrative expenses of the Cases, including all unpaid fees and expenses of the professionals retained by the Debtors and the Committee (the "Professionals") after application of any retainer held by a Professional, as provided in any order by the Court regarding payment of the fees and expenses of Professionals. Notwithstanding the Budget or anything else herein or in any other DIP Loan Document to the contrary, from and after the date (the "**Carveout Trigger Date**") of delivery by the DIP Lender to the counsel to the Debtors, counsel to the Committee and the UST of notice that both (a) an Event of Default has occurred and is continuing and (b) the DIP Lender has triggered the Carveout, administrative expenses shall (subject to the last sentence of this Paragraph 16) be funded solely from the Carveout, which shall be set aside solely for payment of (x) fees and expenses of Professionals, (y) fees, expenses, and costs then due and payable to the UST and/or Clerk of the Court under 28 U.S.C. § 1930 and (z) potential future fees, expenses, and costs of a statutory trustee appointed in Cases in the amount of $25,000 which, for the avoidance of doubt, is part of and not in addition to the Carveout; provided that in no event shall:

(i)       Payment of any amount contemplated by the Carveout (or any other amount owed to any Professional) constitute a personal liability of the DIP Lender, any Affiliate, or any other Indemnified Person; or

(ii)       Any such amount be used to fund fees, costs, or expenses incurred in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loan, DIP Lien, DIP Claim, DIP Obligation, DIP Loan Document, or right or remedy of the DIP Lender.

For the avoidance of doubt, the foregoing shall in no way limit payment, as a carveout of the DIP Lenders' Collateral, of fees and expenses of (i) Professionals incurred in accordance with the Budget prior to the Carveout Trigger Date and otherwise approved by the Court or (ii) any Transaction Fees approved by the Court becoming due to SC&H Group, Inc. as a result of the closing of a Transaction (as defined in the Debtors' Application to Retain SC&H Group, Inc. as Investment Banker [Docket No. 73]) regardless of when such closing occurs), and the DIP Lender consents to any Court approved fees due to SC&H being paid directly from proceeds of the Transaction generating such fees, separate and apart from the Carveout, and such payment of such approved fees to SC&H shall not reduce the Carveout.

22.       All information and documents provided by the Debtors to the DIP Lender pursuant to Article V, Section 5.01 of the DIP Credit Agreement, shall be contemporaneously provided to the Committee.

23.       DIP Lender acknowledges (a) that there have been alleged liens and security interests asserted in pleadings filed by creditors on the docket of these Cases to date and (b) that there may be additional liens and security interests asserted under section 546(b) of the Bankruptcy Code, and that such liens and security interests are not a violation of Debtors' representations and warranties in Article IV of the DIP Credit Agreement. DIP Lender further acknowledges that that no pleading or allegation in a pleading filed to date on the docket of these Cases constitutes a "material adverse effect" within the meaning of the DIP Credit Agreement.

24.     Subject to Paragraph 19 above, the automatic stay imposed by Bankruptcy Code section 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Interim Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

**Miscellaneous Provisions**

25.     The reversal or modification on appeal of this Interim Order shall not affect the DIP Loan, the DIP Claims, the DIP Lien, the DIP Loan Documents or the Superpriority Claim..

26.     This Interim Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (w) confirming a chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Bankruptcy Code section 1141(d)), (x) appointing an examiner or chapter 11 trustee, (y) converting the Cases to cases under Bankruptcy Code chapter 7, or (z) dismissing the Cases. This Interim Order, together with all DIP Loans, DIP Liens, DIP Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

27.     Successors and Assigns. The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, KORE, the Term Loan Lenders, the IRS and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors)..

28.     Modification of Stay. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit (i) the Debtors to

grant the DIP Liens to the DIP Lender, as applicable, and (ii) the parties to take any action specifically authorized or contemplated by this Interim Order.

29.     <u>Notice</u>. The Debtors shall, within two business days following the entry of this Interim Order, serve by regular mail, copies of a notice of entry of this Interim Order, together with a copy of this Interim Order, to: (i) proposed counsel to the Committee; (ii) counsel for the Debtors' prepetition secured lenders; (iii) the Office of the United States Trustee for the District of Delaware; (iv) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (vi) the Debtors' twenty largest unsecured creditors on a consolidated basis and/or their counsel; (vii) the DIP Lender; (viii) all parties having or claiming an interest in cash collateral and/or their counsel; and (ix) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. The notice of entry of this Interim Order shall state that any party-in-interest objecting to the entry of a final order on the Motion shall file a written objection with the United States Bankruptcy Court Clerk for the District of Delaware no later than 4:00 p.m. on September 27, 2021. A final hearing shall be held on the Motion and any objections thereto on October 4, 2021 at 10:00 a.m. prevailing Eastern time.

30.     In the event of any inconsistency between any other DIP Loan Document and this Interim Order, the terms of this Interim Order shall govern.

31.     Payment of the remaining amount owed to KORE is reserved to the final hearing.  KORE shall provide to the Debtors as soon as possible detail regarding the remaining fees and other charges owed to KORE.  The parties shall attempt to reach agreement on the amount to be paid to KORE in connection with the final funding of the DIP Loan.  No later than five days before the final hearing, the Debtors and KORE shall submit letter briefs to the court of no more than five pages addressing the remaining unresolved issues regarding the amount to be paid to

KORE under its loan documents. The Committee may also submit a letter brief. KORE shall provide information regarding its claim for legal fees in accordance with the U.S. Trustee guidelines or as otherwise agreed by the parties without disclosing attorney client information

32.     Effectiveness. The findings of fact and conclusions of law contained in this Interim Order shall take effect immediately upon the Effective Date. The liens and claims granted to the DIP Lender under this Interim Order, and the priority thereof, and any payments made pursuant to this Interim Order, shall be binding (subject to the terms of this Interim Order) on the Debtors, any successor trustee or examiner, any Chapter 7 Trustee, and all creditors of the Debtors, as provided in section 364(e) of the Bankruptcy Code.

33.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Interim Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Interim Order, all of which are hereby waived for cause shown.

34.     The Court has and shall retain jurisdiction to enforce this Interim Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

**Dated: September 15th, 2021**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**