# SILVERANG
# ROSENZWEIG
# & HALTZMAN, LLC
### ATTORNEYS AT LAW

Woodlands Center
900 E. Eighth Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115 Telephone
(215) 754-4934 Facsimile
www.sanddlawyers.com

**William C. Katz, Esquire**
**(610) 263-0138 Direct Dial**
**(215) 754-4934 Direct Fax**
**Email: wkatz@sanddlawyers.com**

September 29, 2021

**VIA CM/ECF**
Honorable Christopher S. Sontchi
United Stated Bankruptcy Court, D. Del.
824 N Market St, 5th Floor, Courtroom # 6
Wilmington, DE 19801

    **RE:**  ***In re Moon Group, Inc., et al., Case No. 21-11140 (CSS)***

Dear Judge Sontchi:

   This law firm and I are special counsel to Moon Group, Inc. and its debtor affiliates (collectively the "Debtors") in the above-captioned Chapter 11 cases. Pursuant to Your Honor's September 15, 2021, Interim Order Authorizing Debtor-In-Possession Financing (the "Interim Order"), we submit this letter brief objecting to Kore Capital Corporation's ("Kore") claims for additional fees and other charges above and beyond the principal and interest that was repaid to it on or about September 17, 2021. Kore has demanded $838,310.63 in fees and expenses. Debtors do not object to Kore's Collateral Monitoring Fees in the amount of $121,278.17, but do object to the remaining $717,032.46 demanded.

## Relevant Facts/Procedural History

   On September 15, 2021, the Court entered the Interim Order. [DI 165]. Consistent with paragraph 31 of the Interim Order, on September 22, 2021, Kore provided the Debtors with "the detail with respect to the remaining amount of KORE's claim against the Debtors" together with invoices intended to substantiate some of the claimed charges. A true and correct copy of Kore's counsel's September 22, 2021 email and the attachments thereto are appended hereto as *Exhibit 1*.

   In such email, Kore claimed that it is owed an additional $838,310.63 in fees and expenses, consisting of:

- Collateral Monitoring Fees totaling $121,278.17. Debtors do not object to these fees.
- Overadvance Fees totaling $108,000.00. Debtors object to these fees in their entirety.
- Diversion of Payment Fees totaling $395,508.30. Debtors object to these fees in their entirety.
- Field Examination Expenses totaling $7,500.00. Debtors object to these expenses in part.

{01422384;1}

- Bond Charges totaling $3,100.00. Debtors <u>object</u> to these charges in their entirety.
- Termination Fee of $30,000.00. Debtors <u>object</u> to this fee in its entirety.
- Legal Fees and Expenses totaling $172,924.16. Debtors <u>object</u> to these fees in their entirety, or, in the alternative, raise specific objections to portions thereof.

On September 27, 2021 the parties conferred, and then on the evening of September 28, 2021, Kore provided a supplemental submission, grouping the more than $150,000 in fees apparently charged by Mr. Musgrave's firm into categories. A true and correct copy of Kore's counsel's supplemental submission is appended hereto as *Exhibit 2*.

## Objections

### A. Kore is not entitled to Overadvance Fees

Kore seeks Overadvance Fees totaling $78,000.00--$1,000.00 per day for every day between July 1, 2021 and September 17, 2021 purportedly pursuant to Section 2.9 of the Loan Agreement [*Exhibit 3*] as amended by the Forbearance/Loan Modification Agreement dated December 30, 2020 [*Exhibit 4*]. Kore also contends that Moon did not cure alleged Overadvances by July 2, 2021 or July 9, 2021, and thus pursuant to Section 3 of the Waiver/Loan Modification Agreement dated June 28, 2021 [*Exhibit 5*], Kore is owed an additional $30,000.00 in fees. *See Exhibit 1*. Kore's own submission demonstrates that both of these contentions are in error.

Kore's "Interest Charge Statement for: 07/01/2021 – 07/31/2021" at "Transaction Activity" states that <u>on July 2, 2021</u>, Debtors made five (5) payments totaling **$1,352,963.75**, thus curing the alleged Overadvance. *See Exhibit 1*. Debtors made eight (8) additional payments totaling $467,992.68 between July 6 and July 7, 2021. Accordingly, neither the $10,000.00, nor $20,000.00 Overadvance fee has been properly assessed.

The claimed $1,000.00 per day in Overadvance Fees are also not owed. First, for the reasons explained at length in Debtors' Adversary Complaint, there were <u>no</u> Overadvances during the time periods at issue. Instead, pursuant to the parties' custom and practice, Kore had waived the credit limit and/or modified and amended the loan documents. On July 8, 2021 and July 9, 2021 (just after the $1,820,956.43 in repayments), Kore advanced the Debtors an additional $1,000,000.00 and $500,000.00, respectively, increasing the outstanding balance owed pursuant to the line of credit *back* to approximately $5.5 million. Kore cannot legitimately enter into a modification agreement on June 28, 2021 related to alleged Overadvances; receive repayment of $1,820,956.43; and then re-advance $1,500,000.00 only to claim these were improper Overadvances.

Further still, pursuant to Section 2.9 of the Loan Agreement, an Overadvance Fee is <u>only</u> due and payable "[i]f any Overadvance is not paid by the next Business Day **after demand**." <u>No such demand was made pursuant to and in accordance with the notice provisions of the Loan Agreement or otherwise</u>. Therefore such Overadvance Fees are simply not owed.

### B. Kore is not entitled to Diversion of Payment Fees

As explained at length in Debtors' Adversary Complaint, Kore committed a precedent default that is the cause of Debtors' alleged "diversion." The alleged diversion was nothing more

than a reasonable attempt by Debtors to mitigate their damages and to ensure that Kore's bad faith conduct would not destroy their business. Kore cannot, on the one hand, be in material breach of its contractual obligations by failing to make necessary advances, and then on the other hand at the same time demand a nearly $400,000.00 windfall based upon its own misconduct. Alternatively, as this issue is the subject of Debtors' pending Adversary Complaint against Kore, the Court should reserve a decision on such fees pending resolution of Debtors' Adversary Complaint against Kore. A copy of the Adversary Complaint is attached as *Exhibit 6*.

### C. Kore is not entitled to $7,500.00 in Field Examination Expenses

Kore seeks to pass through $7,500.00 in alleged costs for an alleged "field examination" conducted between July 7, 2021 and July 15, 2021. No actual field examination was conducted on those dates. Rather, in early July, Kore's consultant conducted a "virtual" field examination, in which it requested, and the Debtors supplied, certain documents and information. By definition this was not a field examination as no Kore representative entered the "field." However, to the extent such a virtual exercise is deemed a field examination, the claim that Kore's consultant spent 7.5 days conducting this field exam is not credible, and is on its face grossly excessive relative to the documents and information actually under review.

### D. Kore is not entitled to a Termination Fee

Kore asserts that "[t]he Debtors are liable for a $30,000.00 termination fee pursuant to Section 10.12 of the Loan Agreement. This is not accurate. Pursuant to Section 10.1(b), where after the first year of the term, the Debtors are not in default and refinance the loan upon prior notice, no fee is owed. Likewise, under Section 10.12, if Kore ceases making advances under the Loan Agreement and Debtors are not in default, a termination and refinance does not trigger a termination fee. For the reasons set forth at length in Debtors' Adversary Complaint, no *legitimate* Event of Default occurred under the Loan Agreement. Rather, Kore is the party that committed a precedent material default, including by refusing to make future advances. In response to Kore's pre-textual claims of Debtors' default, , Debtors refuted those claims by letter dated July 16, 2021 and put Kore on notice of their intent to refinance the debt in short order. [*Exhibit 7*]. Thus, no Termination Fee is properly charged under the Loan Agreement.

### E. Kore is not entitled to its alleged Legal Fees and Expenses, or, alternatively, the Court should defer its decision pending resolution of Debtors' Adversary Complaint against Kore.

Kore relies upon Section 10.6 of the Loan Agreement in support of its claim to $176,024.16 in legal fees and expenses (including bond fees). Consistent with the bankruptcy code and case law, Section 10.6 only permits Kore to seek reimbursement for "reasonable" costs and expenses. For the reasons set forth in Debtors' pending Adversary Complaint, Kore is the party that committed a precedent default, and in connection therewith, pre-textually claimed that Debtors were in default with a good faith basis in fact or law. <u>All</u> of the fees and expenses Kore seeks to pass through to Debtor were incurred in furtherance of its own misconduct. As such, <u>no such legal fees and expenses</u> are *reasonable* and thus they are not recoverable. By letter dated July 16, 2021, Debtors notified Kore of their intention to refinance the debt, and requested a very brief window of time to do so. <u>Kore refused, and, instead, embarked on an unreasonably aggressive crusade when the same</u>

results would have been achieved without costs incurred had Kore simply behaved *reasonably* in response to the July 16, 2021 letter, and permitted the Debtors to refinance in an orderly manner.

Many of the specific fees sought are not reasonable in whole or in part:

- Kore seeks payment of $150,088.89 charged by Gordon Feinblatt LLC. These charges are not reasonable in whole or in part.

  o It is Kore, not the Debtors, who defaulted under the subject line of credit loan facility. Despite this fact, Kore proceeded to litigate this dispute in an unreasonably aggressive matter, filing a purported emergency motion for the appointment of a receiver over all of the assets of Debtors-- a complete takeover of the Debtors' businesses and assets--even though Kore only had a collateral interest in Debtors' accounts receivable, while separately seeking to confess judgment against the Debtors (and their principal) in Maryland state court. Kore's supplemental submission indicates that Kore seeks $34,810.00 for its wholly unnecessary and grossly overbroad receivership petition, and an additional $7,569.00 regarding its attempt to confess judgment. Much of the latter are post-petition fees that relate to proceedings involving only Debtors' principal, not the Debtors.

  o At the same time, Kore is also seeking reimbursement for fees incurred to *also* bring an action against the Debtors' largest customer, Stonemor, seeking to recover the very same funds at issue in the Maryland state court litigation. Despite not being in privity of contract with Stonemor and despite Stonemor *honoring* its contractual duties to the Debtors, Kore brought claims sounding only in breach of contract under the guise of stepping into the shoes of the Debtors. The claim was thus meritless. Moreover, the suit against Stonemor was simply not remotely necessary given the multiple pending actions against the Debtors to recover the same principal and interest sums. Kore seeks $17,885.50 for these meritless and unnecessary proceedings.

  o Gordon Feinblatt billed time for making a demand that the Chesapeake City Maryland Postmaster redirect all mail addressed to the Debtors to Kore. Such demand was far in excess of a highly circumscribed power of attorney contained in the Loan Agreement, and was made under multiple false pretenses, thus appearing to violate 18 U.S.C. § 1701 and 18 U.S.C. § 1708.

  o The time incurred by counsel at Gordon, Feinblatt is both grossly excessive and duplicative. Mr. Musgrave billed 27.3 hours in July; while a more junior partner at the firm Bryan Mull, billed nearly the same hours during that same month. In August, Mr. Musgrave purported to bill 83.2 hours to the file, while Mr. Mull billed an additional 35.9 hours. Then from September 1 through September 20, Mr. Musgrave claims to have billed an additional 59.8 hours, and Mr. Mull 34.5 hours. During this same time period, associates also had limited billings, but do not appear to have been delegated basic drafting tasks. Given the nature of this dispute, these billings are grossly excessive when considered *en gross* even when Kore's unreasonably aggressive tactics are considered. This is confirmed Kore's September 28, 2021 supplemental submission which indicates that Gordon Feinblatt billed over $11,000 for "miscellaneous" matters they were unable to tie to any particular proceeding, and far more outrageously, billed **$88,053.50** in connection with these bankruptcy proceedings where all Kore had to do to secure repayment was *not interfere anymore precisely as Debtors had requested in their July 16, 2021 correspondence*.

- o Moreover, Mr. Musgrave and Mr. Mull each submitted multiple time entries for the days they worked on this matter, which seems to have resulted in billing far more time than was actually incurred. For example, Gordon, Feinblatt's invoices include *eighteen* (18) separate time entries for Mr. Musgrave from August 2, 2021, many of which appear to relate to task that were likely completed together. This practice occurs throughout the three) month period in question and appears to have been employed by each of the attorneys and paraprofessionals at Gordon, Feinblatt.

- o In addition, Gordon, Feinblatt has attempted to pass through excessive expense charges. For example, its September "pre-bill" includes $594.00 in printing and scanning charges, while the firm's August invoices includes $518.10 "reproduction charges." Neither states the per page rate or the number of pages allegedly printed/scanned.

- Kore is also attempting to pass through to the Debtors' attorneys' fees charged by three (3) other firms whose work was that of local counsel and appears duplicative of fees charged by Mr. Musgrave's firm: (1) $1,690.25 in fees incurred with Baker, Thomas & Emrey, P.A.—Kore's "local counsel" in Maryland, despite Mr. Musgrave being, himself a Maryland attorney, (2) $995.00 in fees charged by the Buchalter firm for services provided by a California attorney, whose involvement in this matter is unknown, and which if related is duplicative of time incurred by Mr. Musgrave, who has been Kore's lead counsel in all of these matters; and (3) $10,453.21 in fees charged by Gellert, Scali, Busenkell & Brown LLC, Kore's local bankruptcy counsel, whose fees largely consist of consulting with Mr. Musgrave's firm.

- Kore seeks repayment of $3,1000.00 in bond charges incurred in connection with its receivership application. There was no good faith basis for this application because Kore was the party in default. Moreover, the application sought relief to which Kore was clearly not entitled. Kore did not merely seek to assert control over its collateral, but sought to impose a <u>complete and total custodial receivership over the entirety of the Debtors businesses and all of their assets</u>. The Debtors should not be obligated to reimburse Kore for the costs of Kore's overzealous, misguided, and bad faith filing, including these bonding fees.

- Kore seeks $8,472.42 in fees payable to Marcher Consulting, an alleged financial consultant. Upon further review of the invoices submitted by Kore, Marcher is the firm that employs the individual, Scott W. Miller, Kore's proposed receiver. The fees incurred appear to be, in large part, time spent by *a financial consultant* reviewing Kore's *legal filings* in connection with a receivership application, or to travel to the Debtors' offices for a "site visit" that never occurred because the Debtors advised Kore in advance that Mr. Miller would not be permitted entry into its offices. Thus, none of these fees are reasonable, and therefore are not recoverable.

Alternatively, the propriety of many of the fees sought by Kore should be determined after the completion of the litigation for Debtors' Adversary Complaint against Kore. If Debtors prevail, then all, or virtually all, of Kore's claimed fees must be deemed unreasonable. To the extent the Court is not inclined to reject some or all of these fees at this time, respectfully the Court should defer a decision on allowance of Kore's fees pending adjudication of Debtors' Adversary Complaint.

          Respectfully submitted,

          */s/ William C. Katz*

          William C. Katz

cc: Counsel of Record (via CM/ECF)