IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MOON GROUP, INC., *et al.*,[1] | Case No. 21-11140 (CSS) |
| Debtors. | (Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

The official committee of unsecured creditors (the "Committee") of the above-captioned debtors and debtors-in possession (the "Debtors") hereby submits this motion (the "Motion") to convert the Debtors' chapter 11 cases to cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). In support of the Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtors apparently stopped payment of at least 200 employee paychecks, totaling approximately $232,000 net of taxes, before the paychecks bounced for employees servicing their largest contract.

2. The Committee is still confirming the details, but it appears that that the Debtors sent paychecks dated January 7, 2022 to certain employees, and those checks were not honored because the Debtors stopped payment on the checks. Upon information and belief, some or all of the paychecks would have bounced if the employees attempted to cash the checks.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Nurseries, Inc. (8411); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); and Rickert Landscaping, Inc. (3988). The Debtors' headquarters and mailing address is 145 Moon Road, Chesapeake City, MD 21915.

39501286.4 01/14/2022

3. The Debtors have also run up significant administrative claims to vendors. According to the Committee's preliminary analysis, these estates have not paid $1,458,181.92 in chapter 11 administrative expenses, of which $1,282,472.24 is more than 30 days outstanding.

4. Beyond administrative shortfall, the Debtors' sale process has not gotten off the starting blocks, with two cancelled auctions. The Debtors have indicated to the Committee that they are in the process of developing a liquidation plan in chapter 11, and intend to continue to operate their businesses as a going concern. While the Committee believes that the Debtors have valuable assets that could be sold, the Debtors have proposed no viable sales process in these chapter 11 cases, since cancelling the auction. The Debtors have also not provided any information that shows the businesses can operate as going concerns without further diminution of value.

5. The Committee cannot stand by and allow value to be eroded through an administratively insolvent chapter 11 process. The Debtors' estates are suffering continuing losses and diminution of the value of their estates. Vendors and employees are being harmed. Under these circumstances, with no viable chapter 11 alternatives, the Committee believes that conversion is in the best interests of the Debtors' estates.

## JURISDICTION

6. This Court has jurisdiction to consider this Motion pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant to sections 1408 and 1409 of title 28. This is a core proceeding pursuant to section 157(b) of title 28. The statutory predicate for the relief requested herein is section 1112(b) of the Bankruptcy Code.

**BACKGROUND**

7.     On August 12, 2021 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.

8.     As of the Petition Date, the Debtors' largest customer—by far—was StoneMor, Inc. ("StoneMor"), a large national operator of cemeteries.  See, e.g., *Declaration of John Pursell, Jr., in Support of First Day Motions* ¶ 13 (testifying that the Debtors were engaged to service 320 cemeteries in 30 states) [D.I. 12].

9.     On October 14, 2021, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code Authorizing the Debtors to Assume Master Services Agreements* [D.I. 262], which was granted by the Court on November 4, 2021 [D.I. 316].  As provided in the underlying stipulation, the Debtors agreed to a $572,605 post-petition cure amount, and a $5.1 million prepetition cure.[2]  The Debtors and StoneMor also agreed that StoneMor could remove its properties from its contract with the Debtors—in other words, "take back the properties"—upon the Debtors' breach of certain conditions.

10.    On October 5, 2021, the Court entered its *Final Order Authorizing Debtor-in-Possession Financing* [D.I. 241], approving a $8 million loan from Legalist DIP GP, LLC.  The stated purposes of the DIP loan were (1) to pay KORE Capital Corporation and (2) to fund a chapter 11 sale process.  The DIP loan is fully drawn.

11.    On November 10, 2021, the Court approved the Debtors' proposed bidding procedures [D.I. 320].  Pursuant to the bidding procedures order, the bid deadline and auction were set for December 6, 2021 and December 8, 2021, respectively.  Later, on December 8, 2021, the Debtors re-noticed the bid deadline and auction to January 6, 2022 and January 11, 2022,

---

[2]     The order included an agreed resolution between the Committee and StoneMor, reserving rights as to whether that $5.1 million cure, if not paid, would be considered a postpetition administrative expense.

3

respectively [D.I. 393]. No qualifying bids were received by the bid deadline, and on January 7, 2022, the Debtors cancelled the auction [D.I. 455].

12. The Debtors are not timely paying chapter 11 vendors. Vendors are owed a total of $1,458,181.92 in postpetition obligations, according to the Debtors' reporting to its lenders and the Committee through January 1, 2022. According to the reporting, $1,282,472.24 has been outstanding for more than thirty days. Estate professional fees are at least $600,000 through November 2021, after application of retainers held by Debtors' counsel. The Debtors owe an estimated $32,000 in U.S. Trustee fees for the fourth quarter of 2021.

13. StoneMor has advised the Committee that it took back all of its properties on January 7, 2022 because of the Debtors' material breaches of their agreements with StoneMor. In other words, the Debtors have apparently lost their largest customer.

14. Things went from bad to worse during the week of January 10, 2022, when the Committee learned that the Debtors' employee paychecks would not be honored. While the Committee has requested further details from the Debtors, it appears that the Debtors sent payroll checks on January 6, 2022, to be received by the employees on January 7, 2022 but the Debtors stopped payment on all of the checks payable to the Debtors' employees servicing the StoneMor contract. Upon information and belief, the checks may have been returned for insufficient funds if cashed. Upon information and belief, the now former Debtor employees are still owed for their services from January 1, 2022 to January 6, 2022 or January 7, 2022 by the Debtors.

## **RELIEF REQUESTED**

15. By this Motion, the Committee seeks the entry of an order converting these cases to cases under chapter 7, for cause. The Committee further requests that the Court vacate its *Order Pursuant to Bankruptcy Code Sections 105(a) and 331 Establishing Procedures for Interim*

4

*Compensation and Reimbursement of Expenses of Professionals* [D.I. 136] (the "Interim Compensation Order") with respect to the unpaid portion of any pending Monthly Fee Applications or Interim Fee Application Requests, both as defined in the Interim Compensation Order.

## BASIS FOR RELIEF

**A.    There Is No Reasonable Likelihood of Rehabilitation.**

16.    This Court can convert the Debtors' cases "for cause."  11 U.S.C. § 1112(b)(1). "Cause" includes "substantial or continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4).  Section 1112 further provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
> > (i) for which there exists a reasonable justification for the act or omission; and
> > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

17.    Accordingly, a court must convert the case if (i) the court determines that cause exists; (ii) the Court does not determine the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (iii) the requirements of Bankruptcy Code section 1112(b)(2) have not been satisfied.  See 7 Collier on Bankruptcy ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed); see generally In re Riverbend Cmty., LLC, No. 11-11771-KG,

5

2012 WL 1030340, at *3 (Bankr. D. Del. Mar. 23, 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent. In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause.' Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause'") (internal citations omitted); 7 Collier on Bankruptcy ¶ 1112.04[4] ("If one of the enumerated examples of cause set forth in section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court must find that movant has established cause"). Section 1112(b) is designed to prevent the debtor-in-possession "from gambling on an enterprise at the creditors' expense when there is no hope of rehabilitation." In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995).

18. At this point, the Committee believes that the Debtors' going-concern businesses have no reasonable likelihood of rehabilitation. "Rehabilitation does not include liquidation. Rehabilitation means to reestablish a business." In re 15375 Memorial Corp., 386 B.R. 548, 552 (Bankr. D. Del. 2008) (reversed on other grounds by In re 15375 Memorial Corp., 400 B.R. 420 (D. Del. 2009)); see also Loop Corp. v. United States Trustee (In re Loop Corp.), 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); In re Landmark Atlantic Hess Farm, LLC, 448 B.R. 707, 714-15 (Bankr. D. Md. 2011) (determination is whether a debtor has "sufficient business prospects."); 7 Collier on Bankruptcy ¶ 1112.04[6][a]. The Debtors have no reasonable likelihood of pursing a sale, much less of rehabilitation or of consummating a confirmable reorganization plan. In this situation, cause for conversion can be based on that factor alone.

19. In addition, the Debtors' estates are continuing to suffer material losses and diminution of value. Meanwhile, professional fees continue to accrue, as do potential

administrative vendor claims. As noted by the Eighth Circuit, "any negative cash flow—including that resulting only from administrative expenses— effectively comes straight from the pockets of creditors." Loop Corp., 379 F.3d at 516; see also In re FRGR Managing Member LLC, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing continuing loss to the estate"). Even worse, the Debtors are apparently failing to adequately fund payroll.

20. For these reasons, cause exists under section 1112(b)(4)(A) to convert the Debtors' chapter 11 cases.

**B.** **Conversion to Chapter 7 Is in the Best Interest of Creditors.**

21. Once the movant establishes cause, section 1112(b) mandates that the Court convert or dismiss the case unless it identifies unusual circumstances establishing that the requested conversion is not in the best interests of creditors and the estate. This standard requires a showing by the debtor or other party in interest that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time. 11 U.S.C. § 1112(b)(2)(A).

22. The Debtors have had ample time to try to consummate a sale, and put these cases on a path to a confirmed plan. The Committee therefore believes that conversion is in the best interest of creditors and the estates.

23. Courts consider the preferences expressed by the creditors themselves in determining what is in their best interests, and here the Committee, as a fiduciary for unsecured creditors of these estates, has determined that conversion is in the best interests of creditors. See, e.g., In re Camden Ordnance Mfg. Co. of Ark., Inc., 245 B.R. 794, 802 (E.D. Pa. 2000) (approving

7

creditors' request to convert case and noting that "creditors are the best judge of their own best interests").

24. Therefore, there exist no unusual circumstances to prevent the conversion of these cases, because there is no likelihood at all that a plan will be consummated within a reasonable time.

## CONCLUSION

25. For the foregoing reasons, the Committee respectfully requests that the Court enter an order granting the Motion, substantially in the form of that submitted herewith.

Dated: January 14, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By: */s/ Lucian B. Murley*
Lucian B. Murley (DE Bar No. 4892)
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6840
luke.murley@saul.com

-and-

Melissa A. Martinez
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7700
melissa.martinez@saul.com

*Counsel for the Official Committee of Unsecured Creditors of Moon Group, Inc., et al.*