### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 21-11140 (CSS) |
| MOON GROUP, INC., et al.,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Hearing Date: TBD** |
| | ) **Objection Deadline: February 22, 2022 at 4:00 p.m. (ET)** |

### MOTION OF PUGLISI REALTY OF DELAWARE, LLC (A) TO COMPEL IMMEDIATE REJECTION OF NONRESIDENTIAL REAL PROPERTY LEASE, (B) FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE THE LEASE, AND (C) TO COMPEL THE DEBTORS TO REMOVE OR ABANDON ALL REMAINING PERSONAL PROPERTY IN THE PREMISES

Puglisi Realty of Delaware, LLC, ("Landlord"), by and through its undersigned counsel, files this *Motion (A) to Compel Immediate Rejection of Nonresidential Real Property Lease, (B) for Relief from the Automatic Stay to Terminate the Lease, and (C) to Compel the Debtors to Remove or Abandon All Remaining Personal Property in the Premises* (the "Motion"). In support of the Motion, Landlord states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Nurseries, Inc. (8411); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); and Rickert Landscaping, Inc. (3988). The Debtors' headquarters and mailing address is 145 Moon Road, Chesapeake City, MD 21915.

2.     The statutory bases for the relief sought herein are sections 105(a), 362(d), 365(d) and 554(b) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended or modified, the "Bankruptcy Code").

## BACKGROUND

### A.     The Chapter 11 Cases

3.     On August 12, 2021 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") commenced the above-captioned chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5.     In connection with the proposed sale (a "Sale") of the Debtors' assets, on November 10, 2021, the Bankruptcy Court entered an order [D.I. 320] approving bidding procedures. The Debtors extended the timeline of the proposed Sale as they were not successful in identifying a purchaser by the original deadlines and ultimately cancelled the Sale as no buyers came to fruition.

6.     On January 14, 2022, the Official Committee of Unsecured Creditors filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [D.I. 468] (the "Committee's Motion"). On January 19, 2022, the United States Trustee filed the *United States Trustee's Motion for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [D.I. 483], together with the Committee's Motion and the other joinders, the "Conversion Motions"). Pursuant to the Conversion Motions, the movants have established that the Debtors are administratively insolvent and unable to reorganize.

7.     On February 3, 2022, the Debtors filed their *Omnibus Objection to the Motions of the Official Committee of Unsecured Creditors, the United States Trustee, and Kore Capital*

*Corporation to Convert These Chapter 11 Cases to Chapter 7 of the Bankruptcy Code* [D.I. 498] (the "Response"), among other things noting that it intends to conduct another sale process, including a potential sale of the Nursery Stock (defined below). However, the proposed revised budget does not to appear to include sufficient funds to satisfy the current administrative insolvency or tie to any timeline for a completion of a sale process. [D.I. 498, Ex. 2]. While the Debtors state in the Response that they are in the process of retaining professional to assist in a new sale process, they provide no information regarding potential purchasers and timeline to complete any sale or any assurance that their cash flow and extended budget will satisfy ongoing administrative expenses, let alone the outstanding rent on the Lease.

**B.**    ***The Lease***

8.    On or about September 15, 2017, Debtor Moon Nurseries, Inc. ("Moon Nurseries") and Landlord entered into a lease agreement (together with all related exhibits, amendments, guarantees and other documents, the "Lease") whereby Landlord leased certain nonresidential real property located at 5556 Augustine Herman Highway, Cecilton, Maryland 21913 (the "Premises") to Moon Nurseries. A true and correct copy of the Lease is attached hereto as **Exhibit A**. The Premises consists of approximately 226.3442 acres of real property used for agricultural purposes.

9.    The Lease provided for an initial term of three years commencing on September 15, 2017 (the "Initial Term"). Following the Initial Term, the Lease automatically renews on a year-to-year basis, on the same terms as the Initial Term, unless and until either party provides written notice of intent to terminate at least one year prior to expiration of the current term. Lease § 2.01. The Lease has not been assumed or rejected by the Moon Nurseries.

10.    The Premises is to be used "solely for the agricultural, horticultural and uses ancillary thereto and related to [Moon Nurseries] nursery and tree farm business." Lease § 4.01. Moon Nurseries is permitted to use the land to grow and sell plants, shrubbery, trees and other

agricultural or horticultural products (collectively, the "Nursery Stock"), which is the property of Moon Nurseries. Upon the expiration or termination of the Lease, Moon Nurseries is required to surrender to Landlord the Premises and improvements thereon in its original condition, including the removal of all Nursery Stock. Lease §§ 4.03, 5.01, 5.02. Specifically, the Lease requires that Moon Nurseries "…shall peaceably and quietly quit and surrender to [Landlord] the Leased Premises in good order and re-graded condition…" upon termination of the Lease. Lease § 4.03. Undoubtedly, Moon Nurseries does not possess the financial resources necessary to comply with the foregoing.

11.     On the Petition Date, Moon Nurseries owed prepetition rent totaling approximately $18,954.84. Additionally, Moon Nurseries failed to make post-petition monthly rental payments as required under Bankruptcy Code sections 365(d)(3) and 503(b)(1) totaling approximately $20,595.16, plus interest and late fees.

12.     Landlord has a potential replacement tenant interested in taking possession of the Premises but cannot do so until the Lease is terminated and the Premises returned to its original condition. The replacement tenant will lease the Premises for agricultural purpose unrelated to Moon Nurseries' use of the Premises. As such, time is of the essence to avoid any further harm and prejudice to the Landlord of its ability to secure a replacement tenant for the Premises and the continued incurrence of rental obligations that may never be paid.

## RELIEF REQUESTED

13.     Landlord respectfully requests that the Bankruptcy Court enter an order (i) compelling the immediate rejection of the Lease pursuant to Bankruptcy Code section 365(d)(2), (ii) lifting the automatic stay for all purposes pursuant to Bankruptcy Code section 362(d) with respect to the Lease and the Premises so that Landlord may pursue its rights under the Lease and

applicable state law to take possession of the Premises and terminate the Lease, and (iii) compelling Debtors to remove or abandon any interest in the Debtors' Nursery Stock.

## BASIS FOR RELIEF

### A.    The Court Should Order Immediate Rejection of the Lease.

14.    The Bankruptcy Court has the authority under Bankruptcy Code section 365(d)(2) to compel a debtor to assume or reject an unexpired nonresidential real property lease.  11 U.S.C. § 365(d)(2).  Generally, a debtor has until confirmation of a plan to assume or reject an unexpired nonresidential real property.  *In re Adelphia Communs. Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003).  However, upon request of a party to a lease, the court "may order the [debtor] within a specified period of time whether to assume or reject such contract or lease."  11 U.S.C. § 365(d)(2). "Congress intended this provision to 'prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.'" *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845).

15.    Courts consider multiple factors in determining whether to compel a debtor to assume or reject an unexpired lease.  Among those factors are (1) the nature of the interests at stake; (2) the balance of the harm to the litigants; (3) the good to be achieved; (4) the safeguards afforded to the litigants; (5) the debtor's failure or ability to satisfy post-petition obligations; (6) the damage that the non-debtor will suffer beyond compensation available under the Bankruptcy Code; (7) the importance of the contract to the debtor's business and reorganization; (8) whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in evaluating a plan or reorganization; and (9) the broad purposes of Chapter 11, which is to permit successful rehabilitation of debtors.  *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (citing *In re Adelphia Communs. Corp.*, 291 B.R.  at 292); *In re Dunes Casino*

*Hotel*, 63 B.R. 939, 949 (D.N.J. 1986). "In deciding whether to accelerate the debtor's decision, the court must balance the interests of the contracting party against the interests of the debtor and its estate." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001).

16.     The above factors support an order compelling immediate rejection of the Lease. Most notably, the Moon Nurseries failed to perform their post-petition obligations under the Lease and have not paid rent for the past three months.    Bankruptcy Code section 365(d)(3) unambiguously requires Moon Nurseries to "timely perform all the obligations…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…." 11 U.S.C. § 356(d)(3). "[T]he clear and express intent of § 365(d)(3) is to require the [debtor] to perform the lease in accordance with its terms." *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816 (3d Cir. 2010).  When obligations arise post-petition under a nonresidential real property lease, including but not limited to payment of rent, a debtor-in-possession must timely and fully comply with such obligations.  Moon Nurseries failure to perform its statutory obligations under the Lease demonstrates its inability to perform under the Lease.  In addition, although the Debtors have expressed an intention to conduct yet another sale process, that process has not been described, commenced nor is there any indication that Moon Nurseries will now satisfy its Lease obligations.

17.     As time continues to pass without payment or certainty as to Moon Nurseries' ability to make payment, the Landlord continues to lose valuable opportunity to enforce its rights under the Lease to mitigate its loss.  Moon Nurseries has had adequate time to evaluate its finances to determine whether it must assume or reject the Lease.  Continuing to allow Moon Nurseries to benefit from use of the Premises while not requiring payment or allowing Landlord to enforce its

contractual and state law rights unfairly benefits the Debtors' estates while unduly prejudicing Landlord.

18.    In light of the Conversion Motions, and the Debtors' response thereto, the future of these cases is uncertain at best, and the Landlord should not have to continue to perform while the Debtors' flagrantly refuse to pay post-petition rent.

**B.    *Cause Exists for the Court to Grant Landlord Relief from the Automatic Stay.***

19.    To allow Landlord to exercise its full rights under the Lease, the Court should further grant Landlord relief from the automatic stay to terminate the Lease.

20.    Pursuant to Bankruptcy Code section 362(d)(1), "on request of a party in interest, the court shall grant relief from the Automatic Stay, such as terminating, annulling, modifying, or conditioning the stay for cause, including lack of adequate protection."  In evaluating whether "cause" exists to modify the stay, "[a] court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties." *See In re Mu'min*, 374 B.R. 149, 164 (Bankr. E.D. Pa. 2007) (citing *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)); *see also Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Courts will consider: (i) the hardship to the estate if stay relief is granted; (ii) the hardship to the movant if stay relief is not granted; and, where an underlying dispute is at issue, (iii) the underlying merits.  *See, e.g., Rexene Prods. Co.*, 141 B.R. at 576.

21.    Although the Bankruptcy Code does not define "cause," courts have found "cause" existed to grant lessors relief from stay to pursue their rights under state law or lease agreements. *See In re Seven Stars Restaurant, Inc.*, 122 B.R. 213, 218 (Bankr. S.D.N.Y. 1990); *In re the Inn at Longshore, Inc.*, 32 B.R. 942, 946 (Bankr. D. Conn. 1983).

22.    Additionally, under section 362(d)(2), relief from stay for an act against property can be afforded "if (A) the debtor does not have an equity in such property; and (B) such property

is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).  The second prong of section 362(d)(2) requires a showing that "the property is essential for an effective reorganization that is in prospect." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633 (1988).

23.     Landlord is entitled to relief from the automatic stay under both sections 362(d)(1) and (2).  Moon Nurseries failure to timely perform post-petition obligations under the Lease constitutes a default under the Lease.  Moon Nurseries has also provided no assurances that it will have the ability to comply with the continuing obligations under the Lease.  Nor has Moon Nurseries provided any indication that there is any value in the leasehold interest or any intent to market the Lease itself, rendering it valueless to the Debtors.  Moreover, the Lease is not necessary to the effective reorganization of the Debtors as they have expressed their intent to liquidate. Therefore, cause exists under section 362(d) to terminate the automatic stay for Landlord.

**C.     The Court Should Compel Debtors to Remove or Abandon Debtors' Personal Property Remaining on the Premises.**

24.     Bankruptcy Code section 554(b) provides "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(b).

25.     Pursuant to the Lease, Moon Nurseries has no property interest in improvements at the Premises, and the only personal property of Moon Nurseries that remains on the Premises is primarily the Nursery Stock.  If such property is of consequential value to Moon Nurseries, then Moon Nurseries should be required to immediately remove the Nursey stock and the trash and debris referenced below at its sole cost.  Otherwise, such property should be immediately abandoned so that the Landlord can relet the Premises and mitigate any further damage.

26.     Further, Moon Nurseries continues to store significant amounts of trash and debris at the Premises.  Unless Moon Nurseries removes the trash and debris, the Landlord will incur significant expense in its removal.

27.     Therefore, to effectuate full equitable and just relief to Landlord, the Court should compel Moon Nurseries to either remove or abandon its remaining personal property, including all Nursey Stock.

## REQUEST FOR WAIVER OF STAY

28.     To proceed with the foregoing, Landlord seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 4001(a)(3), any "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The imposition of the fourteen (14) day stay would be inconsistent with the relief requested herein and Landlord's need for immediate relief from the stay imposed by Bankruptcy Code section 362.  Accordingly, Landlord submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent applicable.

## CONFERENCE REQUIREMENT

29.     In accordance with Local Rule 4001-1(d), Landlord will confer with Debtors' counsel regarding this Motion in advance of the hearing for the purposes of determining whether a consent judgment may be entered and/or for the purpose of stipulating to relevant facts.

## NOTICE AND NO PRIOR REQUEST

30.     Notice of this Motion has been provided to the following or in lieu thereof, their counsel, if known: (a) the Debtors, (b) the Office of the United States Trustee; (c) the Official Committee of Unsecured Creditors; and (d) all parties who have requested notice in these chapter

Case 21-11140-CSS    Doc 513    Filed 02/07/22    Page 10 of 10

11 cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

31.     No prior request for relief sought in this Motion has been made to this or any other Court.

WHEREFORE, Landlord respectfully requests that the Court grant the relief requested by this Motion and such further relief as may be just and proper under the circumstances.

Dated: February 7, 2022
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kerri K. Mumford*
Kerri K. Mumford (No. 4186)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4400
Facsimile:     (302) 467-4450
Email:         mumford@lrclaw.com

*Counsel to Puglisi Realty of Delaware, LLC*